# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

**UNITED STATES OF AMERICA**                    **CRIMINAL NO. 06-60080-01**

**versus**                                       **JUDGE HAIK**

**NEDDIE FALCON, SR.**                          **MAGISTRATE JUDGE HILL**

## ORDER OF DETENTION PENDING TRIAL
### (by Magistrate Judge Mildred E. Methvin)

Defendant Neddie Falcon, Sr., is charged in a one-count indictment with possession of computer disks containing images of child pornography in violation of 18 U.S.C. §2252A(a)(5)(B).[1]  The government requested detention, and a hearing was held on June 15, 2007, before the undersigned, Magistrate Judge Mildred E. Methvin.  At the conclusion of the hearing, it was determined that no condition or combination of conditions will reasonably assure defendant's appearance and the safety of any other person or the community, and that defendant should be detained pending trial.  This memorandum constitutes the written reasons for detention.

## I.  Bail Reform Act, 18 U.S.C. §3141 *et seq.*

### A.  Statutory Scheme

The statutory scheme of the Bail Reform Act favors release over pretrial detention.  If release on a standard unsecured bond is not sufficient, the Act requires pretrial release "subject to

---

[1] **§ 2252A. *Certain activities relating to material constituting or containing child pornography***
    (a) Any person who * * *
        (5) either * * *
            (B)   knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer; or * * *
            shall be punished as provided in subsection (b).

2

the least restrictive further condition, or combination of conditions, that [the court] determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §3142(c)(1)(B); <u>U.S. v. Reiner</u>, 468 F.Supp.2d 393, 395 (E.D.N.Y.,2006).

However, the court "shall order the detention of [the defendant] before trial" if the court "finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. §3142(e); <u>United States v. El-Hage</u>, 213 F.3d 74, 76 (2d Cir.2000); <u>United States v. Gotti</u>, 358 F.Supp.2d 280, 282, (S.D.N.Y.2005).

A detention hearing may only be held if one of the six circumstances listed under 18 U.S.C. §3142(f) applies.  Here, a hearing was authorized because the offense charged is considered a "a crime of violence" under §3142(f)(1)(A).[2]  <i>See</i> <u>United States v. Riccardi</u>, 2002 WL 1402232, *2 (D.Kan. June 26, 2002) (the unlawful possession of visual depictions of minors engaged in sexually explicit conduct is an offense that falls within the Bail Reform Act's explicit definition of "crime of violence"); <u>United States v. Thomas</u>, 2006 WL 140558, *6 (D.Md. Jan.13, 2006) (receipt, possession and shipment of child pornography in violation of 18 U.S.C. § 2252(A) falls within the Bail Reform Act's definition of "crimes of violence").

The standard of proof differs for flight risk and danger to the community.  The government must demonstrate by "clear and convincing evidence" that no condition or combination of conditions will reasonably assure the safety of any other person and the

---

[2]  A "crime of violence" includes "any felony under chapter . . . 110 . .."  <i>See</i> 18 U.S.C. §3156(a)(4)(C).  The criminal charge against defendant (18 U.S.C. §2252A) is contained within Chapter 110 of Title 18, entitled "Sexual Exploitation and Other Abuse of Children."

3

community, <u>United States v. Mercedes</u>, 254 F.3d 433, 436 (2d Cir.2001).  The lower standard of "preponderance of the evidence" applies to the determination of risk of flight.  *See* <u>United States v. Friedman</u>, 837 F.2d 48, 49 (2d Cir.1988).

### *B.  Factors to be Considered*

The factors to be considered in determining whether successful release conditions can be imposed are contained in §3142(g):

> **(1)**  the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> **(2)** the weight of the evidence against the person;
>
> **(3)** the history and characteristics of the person, including --
>
>> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal or completion of sentence for an offense under Federal, State, or local law; and
>
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

## II.  Evidence Presented

### *A.  Nature of the Offenses Charged*

As noted, Falcon is charged in a one-count indictment with possession of computer disks containing images of child pornography, which charge constitutes a "crime of violence" under

4

18 U.S.C. §3156(a)(4)(C).  No presumption against release applies to this particular charge under §3142(e) of the Bail Reform Act.

### B.  Circumstances of the Offense and Weight of the Evidence

Falcon was originally arrested by St. Mary Parish law enforcement officers in September of 2004.  In a videotaped confession following his arrest, Falcon admitted to downloading child pornography from the internet, stating that he did so "to feel the children's pain."[3]  He was released on bond with the conditions that he not have unsupervised contact with children aged 15 or younger.

The indictment, combined with the videotaped confession, establish that the weight of the evidence is strong.

### C.  Personal History and Characteristics

Falcon is 56 years old and has an eighth grade education.  He has been a licensed boat captain since approximately age 19, and has maintained steady employment in that capacity.   He has lived and worked in Louisiana most of his life, although he also worked for several years in other states, including New York , New Jersey, and Florida.

Falcon testified at the initial appearance that he can earn up to $8,000 per month when working full-time, although he denies having any checking accounts, savings accounts, stocks, bonds, real estate, or other significant assets.  He has resided for the past two years in Berwick, Louisiana, in a room rented to him by Ernest Voisin, a diesel mechanic who has known Falcon

---

[3]  These facts were established by the unopposed, proffered the testimony of FBI Agent Joseph Pisano, who personally viewed the videotaped confession.

5

since 1983.  Falcon pays Voisin $250 per month in rent, and helps with other bills.  Since December, 2006, Falcon has been working as a boat captain for TK Towing of Morgan City.

Falcon is divorced and has three adult children with whom he has no contact.  A key witness for the government was defendant's son, Karry Falcon, a deputy with the Lafayette Parish Sheriff's Office.  Karry, age 27, testified that his father had been physically abusive to Karry, his mother, and his two younger siblings when they were growing up.  When asked when the abuse began, Karry testified that it had gone on "for as long as I can remember."

Karry testified that Falcon had struck the children with anything at hand: belts, hoses, two-by-fours, coat hangers, fly swatters.  He would also kick them with his boots.

As youngsters, Karry and his younger brother had separate rooms, but elected to sleep together, head to toe, in order to try to protect each other or escape from defendant's blows.

The physical abuse extended to Karry's mother.  The family existed in virtual seclusion from other family or friends, and the abuse was never reported to the police or school officials.

Karry testified that in April of 1989, when he was nine years old, Falcon kicked him in the stomach in the mistaken belief that Karry had damaged a wooden bread box.  Falcon was wearing boots at the time.  After several days of being unable to eat, Karry became ill while at school.  School officials alerted Karry's mother, who brought him to the hospital.  After exploratory surgery, doctors determined that Karry had suffered a burst appendix and damage to his stomach and intestines.  The family was questioned about the cause of the injuries, but neither Karry nor his mother reported the abuse.  Shortly thereafter, in approximately 1990, defendant "vanished" and was gone from the family for two or more years.  Other evidence established that defendant went  to New York and/or New Jersey to work during this time period.

6

In 1991, while Falcon was in New York, Karry's mother obtained a divorce from him. Nonetheless, after Falcon returned to Louisiana in 1992 or 1993, he would come to the family home on a regular basis and sexually "force himself" upon Karry's mother. In addition, on two occasions, defendant threatened to burn down the house. He actually attempted to light a fire on one of these occasions. The abusive activity continued until approximately 1996 or 1997, when once again, defendant "disappeared" for a length of time.

Karry testified that his father disliked gays, blacks, and the government; that he had failed to pay child support and taxes; and that he routinely fired members of his boat crews for various reasons. When the children were younger, defendant kept "countless" knives and guns in the home, including approximately 20 rifles and shotguns, and at least four handguns.

Defense counsel made some attempt to argue that Karry Falcon's testimony was unreliable because he was biased. There is no dispute that defendant abused Karry as a child, and that Karry also witnessed defendant's abuse of his mother and siblings. Defendant presented no contrary evidence. However, it is important that the issue of Karry Falcon's credibility be explicitly addressed.

Karry's testimony was delivered in a reserved and thoughtful manner. Although he had not seen his father in many years, and despite the painful years of abuse he described, there was no sign of vengeance or anger in Karry's manner. He explained that he did not hate his father, but instead he had learned to use his painful childhood experiences to fuel his passion as a police officer. The undersigned magistrate judge found Karry's testimony extremely credible, and not motivated by bias or desire for revenge.

7

Defendant called three witnesses to testify as to his ties to the community and his character.  All three of the witnesses corroborated Karry's testimony regarding the family's seclusion during the time that the domestic abuse was ongoing.

Robert Falcon, defendant's brother, testified that before seeking disability, he had worked as a tugboat captain and that he and the defendant had worked for the same company at one time.  Robert admitted that he had never stayed with defendant in his family home, and that he had visited there only about five times in his life.  He knew little about defendant's breakup with his wife, and had no contact with defendant when he was living in New York, New Jersey, and Florida.  Robert testified that he did not believe his brother posed any danger to the community.

Amelia Bearb, defendant's mother, testified that defendant had lived with her at Holly Beach for a short time in 2004.  When defendant was married and raising his children, however, she did not visit in their home.  She blamed defendant's ex-wife for preventing her from seeing the children when they were younger, stating that "she's a bitch."  Bearb admitted that she had made no efforts to contact her grandchildren now that they are adults.  Bearb denied knowing anything about defendant's allegedly abusive behavior towards his family, and denied that defendant was dangerous in any way.  She testified that defendant has a temper, but that "everyone does."

Ernie Voisin, defendant's landlord and roommate, testified that he is a diesel mechanic; he has known defendant since 1983; they worked together in New York for three years in the early 1990's; they have not worked together since then because Voisin developed cancer while in New York; defendant currently rents a room from Voisin in Berwick, La., for $250 a month; when defendant was married, Voisin visited a few times in his home and remembers seeing one

8

handgun; the last time Voisin saw any of defendant's children, they were in grammar school or maybe high school;  in his opinion, defendant is not violent or dangerous; and if released on bond, Voisin would be willing to serve as a third party custodian.

### D.  Past Criminal History

Defendant was convicted of attempted rape at age 16, as a juvenile.  At age 17, he was arrested for burglary, with no disposition.  In April of 2000, he was charged with DWI first offense and improper lane usage, and  pled guilty to a reduced charge of reckless operation.

Falcon has no other criminal history with the exception of the arrest in St. Mary Parish in September of 2004 on the underlying charges.

### E.  Status at the Time of the Offense

At the time of the alleged offense, Falcon was not on probation, parole, or other release in any jurisdiction.  As noted above, he has been on a state bond since September of 2004 on state charges arising out of the same conduct.

### F.  Nature and Seriousness of Danger

With respect to his involvement in child pornography, although defendant is not charged with creating child pornography himself, his admitted possession nonetheless contributed to the exploitation of children.  As discussed in more detail *infra* at p. 10-11, there are no conditions of release which can effectively eliminate this type of activity, since access to the internet is so universal.

With respect to other issues of danger to the community, the government presented clear and convincing evidence that defendant has a temper, that he was physically abusive to his wife and children for years, and that the abuse was severe and relentless.  Even after defendant's wife

divorced him, he continued to force her to have sex with him for six or seven years.  He

threatened to burn down the family home, and at least once actually tried to set a carpet on fire.

Defendant's mother admitted that he has a temper.

Defendant has never sought counseling or made any attempts to accept responsibility for

his actions or repair his relationship with his children.

Defendant gave a videotaped confession to police officers following his arrest, stating

that he downloaded child pornography so he "could feel the children's pain."  Clearly, the

defendant's problems with anger, abuse, violence, and subjugation of others is not limited to his

past domestic situation, but is an active and ongoing aspect of his personality today.

## III.  Conclusion

After carefully considering the evidence presented, the undersigned concluded that there

are no conditions or combination of conditions which will reasonably assure the appearance of

defendant and the safety of the community.  In arriving at this conclusion, all of the factors

enumerated in 18 U.S.C. §3142(g) have been considered, including the nature and circumstances

of the offense, the weight of the evidence against the defendant, the history and characteristics of

the defendant, and the nature and seriousness of the danger to any person or the community that

would be posed by the defendant's release.

### *Risk of Flight*

With respect to risk of flight, the government has shown by a preponderance of the

evidence that defendant is a flight risk.  Karry Falcon testified that his father had disappeared

twice before in the past, and that the disappearance in 1990 was shortly after defendant had

violently kicked Karry in the stomach and landed him in the hospital.  Medical officials had

asked questions about the injuries, and the evidence suggests that defendant intended to flee any possible legal consequences attendant to this incident.

Karry noted that defendant has a boat captain's license, which allows him the ability to make a living almost anywhere that there are navigable waters.  Karry testified that "any day he chooses," defendant can and will disappear again.  In fact, evidence shows that defendant "disappeared" from his family at least twice before, and in those instances, he found work in New York, New Jersey, and Florida.

### *Danger to the Community*

With respect to danger to the community, the undersigned concludes that the government met its burden to show, by clear and convincing evidence, that defendant's release would pose a danger to the community.

As discussed, *supra* at pp. 8-9, the defendant has long-standing problems with anger management and a history of physical and mental abuse levied not only against his children, now grown, but also against his wife – both before and after their divorce.  There is no evidence that defendant has addressed his problems in this area, or that he has accepted any responsibility for his abusive behavior.

Furthermore, defendant's release would endanger the community by allowing him to continue trafficking in child pornography.  It is not possible to formulate conditions of release which would completely deprive such a defendant of the ability to possess or attempt to possess additional child pornography, "or to communicate and interact with (via email, internet, or phone) others involved in the possession, sale, and distribution of child pornography or other sexual abuse of children, which would also create a clear danger by facilitating the criminal and

11

dangerous exploitation of children by other individuals." U.S. v. Reiner, *supra*, 468 F.Supp.2d at 397.

Neither the Pretrial Services Officer who interviewed the defendant, nor the undersigned, is able to identify conditions of release which would reasonably address defendant's flight risk and his potential danger to the community if released.

For the foregoing reasons, **IT IS ORDERED** that the defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the defendant to the United States marshal for the purpose of an appearance in connection with a court proceeding.

Signed at Lafayette, Louisiana, on June 18, 2007.


Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)